# UNITED STATES *v.* BELLINGHAM BAY BOOM COMPANY.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 21. Submitted December 15, 1899. — Decided January 29, 1900.

The power of Congress to pass laws for the navigation of public rivers, and to prevent any and all obstructions therein, cannot be questioned.

When the Attorney General acts under the authority conferred by the river and harbor act of September 19, 1890, c. 907, he has the right to call upon the court, upon proper proofs being made, to enjoin the continuance of any obstruction not authorized by statute, and the court has jurisdiction, and it is its duty to decide whether the existing obstruction is or is not affirmatively authorized by law.

In such inquiry the court is bound to decide whether the boom, as existing, is authorized by any law of the State, when such law is claimed to be a justification for its creation or continuance.

There is no doubt that the boom in question in this case violates the statute under which it was built, because it does not allow free passage between the boom and the opposite shore for boats or vessels as provided for in the state law.

THE case is stated in the opinion.

*Mr. Solicitor General* for the United States.

No appearance for the Bellingham Bay Boom Company.

MR. JUSTICE PECKHAM delivered the opinion of the court.

This suit was commenced in the Circuit Court of the United States for the State of Washington, Northern Division. The Government brought it under the direction of the Attorney General, to obtain an injunction enjoining the defendant from further continuing a certain boom which it had constructed across the Nooksack River in that State, and to obtain the removal of the same as an obstruction to the navigation of that river.

The defendant is a corporation organized under the laws of the State of Washington, and in its answer it denied that the boom was an obstruction to the navigation of the river, and

alleged that it was duly authorized to construct and maintain it by virtue of an act of the legislature of the State, and that it had completed the structure prior to the enactment of the Federal river and harbor bill on the 19th of September, in the year 1890.

The authority under which this suit was commenced is the river and harbor act of 1890, approved September 19 of that year, 26 Stat. 426, 454, c. 907, the tenth section of which reads as follows:

"SEC. 10. That the creation of any obstruction, not affirmatively authorized by law, to the navigable capacity of any waters, in respect of which the United States has jurisdiction, is hereby prohibited. The continuance of any such obstruction, except bridges, piers, docks and wharves, and similar structures erected for business purposes, whether heretofore or hereafter created, shall constitute an offence, and each week's continuance of any such obstruction shall be deemed a separate offence. Every person and every corporation which shall be guilty of creating or continuing any such unlawful obstruction in this act mentioned, or who shall violate the provisions of the last four preceding sections of this act, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding five thousand dollars, or by imprisonment (in the case of a natural person) not exceeding one year, or by both such punishments, in the discretion of the court, the creating or continuing of any unlawful obstruction in this act mentioned may be prevented and such obstruction may be caused to be removed by the injunction of any Circuit Court exercising jurisdiction in any district in which such obstruction may be threatened or may exist; and proper proceedings in equity to this end may be instituted under the direction of the Attorney General of the United States."

On the trial it appeared that the Nooksack River is a navigable stream having its source in Whatcom County, State of Washington, and runs through Whatcom County to Bellingham Bay, emptying into that bay, and thence into the Pacific Ocean. The waters of the river lie wholly within Whatcom County, and they are navigable from its mouth for a distance

of several miles towards its source by light water craft. The boom in question, built by the defendant company at a point just above where the river empties into the bay, is frequently an obstruction to the navigation of the river by steamboats and other craft, as the boom crosses the channel of the river and entirely fills it, excepting that there is what is termed a "trip," which may be opened and vessels pass through the same on their way up and down the river. This "trip" is, however, frequently so choked and blocked up by logs and drift wood coming down the river as to render it impossible to open it.

The defendant during the continuance of the boom has from time to time expended moneys for the improvement of the navigation of the river by removing brush, trees and drift from the mouth thereof, and it has removed trees, snags and drift from the channel for a distance of from fifteen to twenty miles from the mouth of the river. Navigation for boats and water craft has thereby been considerably facilitated, but at the same time the obstruction to the navigation of the river by reason of the existence of the boom is material and at times total. The river is used for navigation by steamboats and small craft for a distance of some miles from its mouth. One of the chief purposes for which the river is used is as an outlet for floating saw logs and timber products to the mills and to market.

The Circuit Court was of opinion that as the chief value of the Nooksack River as a highway is for the floating of saw logs, that persons and corporations having to use it for that purpose have rights equal to the rights of others to use the river for a highway for boats and vessels, and that a boom at the mouth of the river being necessary for gathering and holding logs is to be regarded as an aid to the use of the river for a lawful purpose and entitled to protection, the same as a wharf or pier constructed at a place for the convenience of vessels; that the boom was constructed under the authority of the state legislature, and it was for that reason excepted from the provisions of the tenth section of the act of Congress. The court therefore dismissed the bill. 72 Fed. Rep. 585.

The Government appealed to the Circuit Court of Appeals for the Ninth Circuit, and that court held that as at the time of the building of the boom there was no act of Congress on the subject, and a state statute authorized the building, it was affirmatively authorized by law within the meaning of the tenth section of the act of Congress. It also held that whether or not the boom was constructed in strict accordance with the terms and provisions of the state statute could not be considered, as that was a question to be determined by the state and not by the Federal court. On these grounds it affirmed the judgment. 48 U. S. App. 443.

It is evident that the first sentence of the tenth section of the Federal act refers to an obstruction created after the passage of the act. The obstruction prohibited is one that is "not affirmatively authorized by law," and the section then provides that "the continuance of any such obstruction, . . . whether heretofore or hereafter created, shall constitute an offence," and authority is given to the Attorney General to cause a suit of this character to be commenced.

At the time when the boom was constructed, Congress had not by any legislation asserted its authority over nor taken into its own jurisdiction the subject of obstructions to the navigation of this river. The appropriations made by Congress in different years since 1884, for improvements in the Nooksack, among other rivers in the Territory of Washington, did not constitute such an assumption of jurisdiction over the navigation of the Nooksack River as to prevent the State from legislating upon the subject. *Willamette Iron Bridge Company* v. *Hatch,* 125 U. S. 1. As Congress had not assumed such jurisdiction either at the time of the passage of the act by the legislature of Washington permitting the construction of a boom by the defendant, nor at the time of its actual construction, then, if it were constructed in a manner conformable to the state statute, it was affirmatively authorized by law at the time of the passage of the act of Congress. It is contended by the Government that this term refers to a law of Congress and does not include any law of a state legislature. We do not so construe section 10.

Congress, it must be assumed, was aware of the fact that until it acted upon the subject of navigable streams, which were entirely within the confines of a single State, although connecting with waters beyond its boundaries, such State had plenary power over the subject of that navigation, and it knew that when in the absence of any statute of Congress on the subject, an obstruction to such a navigable river had been built under the authority of an act of the legislature of the State, such obstruction was legal and affirmatively authorized by law, because it was so authorized by the law of a State at a time when Congress had passed no act upon the subject. When Congress, in 1890, passed the river and harbor bill we think the expression contained in section ten in regard to obstructions "not affirmatively authorized by law," meant not only a law of Congress, but a law of the State in which the river was situated, which had been passed before Congress had itself legislated upon the subject. An obstruction created under the authority of a state statute under such circumstances, we cannot doubt, was an obstruction "affirmatively authorized by law." When, therefore, the section continues, and provides that "any such obstruction, . . . whether heretofore or hereafter created," shall constitute an offence, it referred to an obstruction as described in the first sentence of the section, namely, an "obstruction not affirmatively authorized by law." If the obstruction were affirmatively authorized by a law of the State, it did not come within the condemnation of the section, and its continuance was, therefore, valid.

The power of Congress to pass laws for the regulation of the navigation of public rivers and to prevent any and all obstructions therein cannot be questioned. When Congress chooses to act, it is not concluded by anything that the States, or that individuals by their authority or acquiescence have done, from assuming entire control of the matter, and abating any obstructions that may have been made and preventing any others from being made except in conformity with such regulations as it may impose. The ultimate power of Congress over the whole subject is undoubted. This has been

decided in numerous cases, and in the case of *Willamette Iron Bridge Co.* v. *Hatch*, 125 U. S. 1, many of them are referred to by Mr. Justice Bradley in delivering the opinion of the court. If, however, in exercising its right in regard to the regulation and control of commerce, private property must be taken, the Government is obliged to make compensation to the owner. *Monongahela Navigation Co.* v. *United States*, 148 U. S. 312, 336. Whether ordering the removal of the obstruction, unaccompanied by the actual taking of the property, would under other circumstances affect the question of compensation, it is not necessary to here decide, as for the reason hereafter given, the boom was an unauthorized obstruction and subject to abatement as such under the act of Congress.

As this defendant claims that the obstruction in the river was affirmatively authorized by an act of the state legislature, we must look at that act for the purpose of determining the validity of the claim. The act under which the boom was created is entitled "An act to declare and regulate the powers, rights and duties of corporations organized to build booms and to catch logs and timber products therein." The third section provides: "Such corporations shall have the power and are hereby authorized, in any of the waters of this State, or the dividing waters thereof, to construct, maintain and use all necessary sheer or receiving booms, dolphins, piers, piles or other structure necessary or convenient for carrying on the business of such corporations: *Provided*, That such boom or booms, sheer booms or receiving booms, shall be so constructed as to allow the free passage between any of such booms and the opposite shore for all boats, vessels or steam crafts of any kind whatsoever, or for ordinary purposes of navigation." 1 Hill Ann. Stat. Washington, § 1592.

The reading of this section shows that the boom authorized to be constructed was one which should allow the free passage between the boom and the opposite shore of boats, vessels, etc. The evidence shows that this boom was not so constructed, because it crossed the channel of the river, completely blocking it, and left no space for the free passage of

boats and vessels between the end of the boom and the opposite shore. The building of the so-called "trip" was no compliance with the act. By the passage of the river and harbor bill, containing the above mentioned tenth section, Congress has acted upon the subject, and has provided for the removal of any obstruction to a navigable river with the exceptions named in the section. When the Attorney General, therefore, acts under the authority conferred by this statute, he has the right to call upon the court, upon proper proofs being made, to enjoin the continuance of any obstruction not authorized by the statute, and the court has jurisdiction and it is its duty to decide the question whether the existing obstruction is or is not affirmatively authorized by law. In such inquiry the court is bound to decide whether the boom as existing is authorized by any law of the State, when such law is claimed to be a justification for its creation or continuance. That question is not for the State alone, but must necessarily be decided by the Federal court in the course of exercising the jurisdiction conferred upon it by the Federal statute. We, therefore, cannot concur with the views of the Circuit Court of Appeals on this subject.

The authority cited by that court for its position was the *Willamette Iron Bridge Company* v. *Hatch*, 125 U. S. 1. In that case, however, there had been no act of Congress upon the subject of the navigation of the Willamette River, and without such statute it was held that the United States could not bring within the scope of its laws, obstructions and nuisances in navigable streams within a State, such obstructions and nuisances being offences against the laws of the State within which the navigable waters lie, and constitute no offence against the United States, in the absence of a statute. The court used the following language:

"There must be a direct statute of the United States in order to bring within the scope of its laws, as administered by the courts of law and equity, obstructions and nuisances in navigable streams within the States. Such obstructions and nuisances are offences against the laws of the States within which the navigable waters lie, and may be indicted or pro-

hibited as such; but they are not offences against the United States laws which do not exist; and none such exist except what are to be found on the statute book. . . . The usual case, of course, is that in which the acts complained of are clearly supported by a state statute; but that really makes no difference. Whether they are conformable, or not conformable, to the state law relied on, is a state question, not a Federal one. The failure of the state functionaries to prosecute for breaches of the state law does not confer power upon United States functionaries to prosecute under a United States law, when there is no such law in existence."

If there were here no Federal law in existence, then the question whether the boom was authorized by a state law or complied with its provisions, would be a state question, as is clearly set forth in the above extract. But the Federal law having been passed, the question then is whether the structure is permitted by that law, and when that law says it may continue, if affirmatively authorized by a state law, the question whether it is so authorized becomes in effect a question whether the Federal law does or does not permit it. If it is authorized by the state law, then the Federal law provides that it may continue; and whether it is or is not, becomes a question for the Federal court to decide.

There is no doubt that the boom in question in this case violates the statute under which it was built, because it does not allow free passage between the boom and the opposite shore for boats or vessels as provided for in the state law. For this reason the Government was entitled to a decision in its favor, and

*We therefore reverse the decrees of the Circuit Court of Appeals for the Ninth Circuit and of the Circuit Court of the United States for the District of Washington, Northern Division, and remand the case to the Circuit Court for further proceedings in accordance with this opinion.*