## People ex rel. v. The West Chicago St. R. R. Co.

1. FREEHOLD—*Involved in an Attempt to Compel Owner of Land Under a River to Lower Its Tunnel Therein.*—A freehold is involved in an attempt of the city of Chicago to compel the owner of land under the Chicago river to lower its tunnel four feet, and thus deprive it of all right and opportunity to use said four feet.

Mandamus.—Error to the Circuit Court of Cook County; the Hon. CHARLES G. NEELY, Judge presiding. Heard in the Branch Appellate Court at the October term, 1902. Dismissed. Opinion filed January 16, 1903.

GRANVILLE W. BROWNING, attorney for plaintiff in error; CHARLES M. WALKER, corporation counsel, of counsel.

W. W. GURLEY, JOHN P. WILSON and CHARLES S. BABCOCK, attorneys for defendant in error.

MR. PRESIDING JUSTICE WATERMAN delivered the opinion of the court.

This is an appeal from an order of the Circuit Court refusing to award a mandamus asked for by plaintiff. Defendant moves to dismiss the appeal, claiming that the proceeding involves a franchise, a freehold, and the construction of the constitution of this state.

From the record here filed it appears that defendant, being the owner of the land on each side of the Chicago river at a certain point between Madison and Twelfth streets and desiring to construct a tunnel under said river between the banks thereof owned by it, the tunnel to be used for the purpose of its business as a common carrier, obtained on the 2d day of April, 1888, from the city of Chicago, an ordinance whereby there was granted to it the right to construct such tunnel for such purpose; and that thereupon it did proceed to construct said tunnel and to place tracks therein connecting with its railroad tracks upon the east and west banks of said river, at great expense, namely, more than one million dollars; that March 3, 1899, by an act of the congress of the United States, a survey and estimate

of the cost of a channel twenty-one feet deep from the mouth of said river to the stock yards on the south branch and Belmont avenue on the north branch, exclusive of cost of removing or constructing bridges or piers or lowering tunnels, was ordered, and the depth of twenty-one feet for such channel was adopted; such act providing that all the work of removing and reconstructing bridges and piers and lowering tunnels necessary to permit a practicable channel of such depth should be done by the city of Chicago without expense to the United States. In the petition for a mandamus it was set forth that the United States Government has taken steps to deepen the channel of the river in accordance with said act; that thereafter by an ordinance of the city of Chicago it was ordered that the West Chicago Street Railway Company, at its sole cost and expense, and without cost, damage, loss or expense of any kind whatsoever to the city of Chicago, proceed to lower the tunnel under the south branch of the Chicago river at or near Van Buren street, so as to provide for a clear depth of water above said tunnel of twenty-one feet at all times, being the same tunnel theretofore constructed by the said West Chicago Street Railway Company under an agreement dated April 2, 1888, between said West Chicago Street Railroad Company and the city of Chicago, and an ordinance passed by the city council of Chicago, April 2, 1888.

The West Chicago Street Railroad Company refused to obey and proceed in accordance with said order of the city council, and a petition for mandamus was filed by the city of Chicago, asking that said West Chicago Street Railroad Company be commanded to proceed to lower its said tunnel at or near Van Buren street, in accordance with the ordinance of the city of Chicago heretofore mentioned.

The petition set forth, among other things, that during the last ten or twenty years there has been a gradual increase in the size and tonnage of vessels used on said Chicago river and that to accommodate the large vessels now in use upon the Great Lakes of Chicago, it has become necessary to increase the depth of the river and remove all obstructions to the navigation thereof.

People v. West Chicago St. R. R. Co.

The petition for mandamus sets forth that since the construction of said tunnel the depth of water in the Chicago river over said tunnel varies from seventeen to eighteen and three-tenths feet and that many modern vessels of large capacity can not ascend said south branch of the river owing to the fact that the water therein is not of the uniform depth of twenty-one feet; that the said tunnel forms an obstruction across the river which prevents vessels of modern draft of the largest capacity from crossing said tunnel and that in consequence thereof a large portion of the ships on the Great Lakes have been prevented from making use of said Chicago river, and that the amount of tonnage entered at the port of Chicago was much less during the year 1899 than in preceding years.

Upon this motion to dismiss the appeal the question of the power of the city of Chicago to compel defendant at its expense to so lower its tunnel that there shall, upon the top of the same, be at all times a depth of twenty-one feet is not involved. If the proceeding for mandamus under consideration involves a franchise or a freehold, then this court has no jurisdiction over this case and the appeal should have been taken to the Supreme Court.

It is conceded by plaintiff that defendant, having title in fee simple to the banks of the stream under and between which the said tunnel is, defendant has a freehold estate in and to the premises between said banks beneath the bottom of the said river; but plaintiff contends that depriving defendant of all or a portion of the space beneath the bottom of said river now occupied and used by defendant will not be depriving it of a freehold estate, and that under the petition for mandamus a freehold estate is not involved, because plaintiff urges defendant's right and title to the land beneath the present bottom of the Chicago river now occupied by the tunnel belonging to defendant is subject to the right of the public to use said river for purposes of navigation, and the right of the public to so use said river is not merely the right to use it in such manner as the demands of navigation forty years ago required, but to use

it in such manner as modern vessels and modern methods of carrying on commerce upon navigable streams now demands or may hereafter demand.

Plaintiff says that no attempt is being made to deprive defendant of its tunnel and no claim is made by plaintiff that defendant has not a right to a tunnel at that place; that changing the level of a tunnel is not taking away a tunnel and that under the statute defendant must maintain its tunnel at such a level as not to interrupt the navigation of the Chicago river. It is manifest that if a freehold is not involved in an attempt to compel the lowering of its tunnel four feet and in depriving it of all right and opportunity to use said four feet, a freehold would not be involved in an attempt to compel it to lower its tunnel twenty feet and to deprive it of all right to use or occupy twenty feet of the space beneath the bottom of said river now occupied by said tunnel. That really sought and attempted to be accomplished by the proceeding under consideration is not to make use of a navigable stream, but to create an artificial stream for the purposes of navigation. The Chicago river was and is in its natural state a navigable stream, having a certain depth and a certain width, varying to some extent with the seasons of the year and the condition of the water. To such navigable stream the public have rights. The owners of land abutting on such stream hold the same subject to the rights of the public for the purposes of navigation.

It, under the demands of commerce, has sometimes been found necessary to artificially increase the width of navigable streams by removing the natural and permanent soil on the sides thereof, and thus increasing the width to which the navigable water extends. Our attention has not been called to any case and we are not aware of any in which it has been held that the public has a right to so remove such permanent shores without compensation to the owners of such banks, or that in the attempt to take such banks a freehold was not involved. If the owners of the permanent shores of a navigable stream may, without compensa-

tion, be deprived of four feet of such shores, we see no reason why, should the demand of commerce require, they may not be deprived of 200 feet for the purpose of making the navigable waters of the stream five or six hundred feet in width and thus capable of accommodating such vessels as now sail upon the ocean.

As applicable to the present motion we are able to perceive no difference between a removal of the fixed banks of a navigable stream for the purpose of navigation, and removing the fixed bottom of a stream for the purpose of increasing its navigability; in either case the party having the freehold estate in such sides or such bottom is deprived thereof and if the attempt to so take is resisted by him a freehold is involved. Plaintiff contends in the case at bar the writ of mandamus asked for would not interfere with the full and absolute enjoyment of the land under the river by the defendant, or with the full and perfect enjoyment by the plaintiff of a tunnel at that point that should not interfere with navigation.

At the present time defendant has a freehold estate in and to the land beneath the bottom of the Chicago river now occupied by its tunnel. It is now in the full, absolute and exclusive enjoyment of such land. By the proceeding under consideration it is proposed to deprive it not only of such full, absolute and exclusive enjoyment, but to deprive it of any use or enjoyment not common to the entire public for the purposes of navigation. The tunnel now existing in this space certainly can not there remain when that space is occupied by water used for the purpose of navigation.

By the present proceeding there is not involved any question of the right of the public, proceeding under the law of eminent domain, to condemn and appropriate the freehold estate of defendant in and to the space now occupied by it under the Chicago river. The sole question upon the present motion is whether an appeal from the judgment of the Circuit Court should have been taken to the Supreme Court, that depending upon whether a franchise or free-

hold is involved in the petition for mandamus filed by appellant.

In Commissioners of Highways v. Chicago and Northwestern Railway, 34 Ill. App. 32, being an appeal from a decree entered upon a bill in equity seeking to enjoin the opening of a highway which had been surveyed and laid out by the plaintiff for public and private use between a dwelling house of one Cornelius Vroom and a public highway crossing the track and one hundred feet right of way of the defendant, which crossing had been attempted to be condemned by the commissioners of highways, it was held that a freehold was involved and the appeal to the Appellate Court was therefore dismissed; the court in that case calling attention to the fact that in Chaplin v. Commissioners of Highways, 126 Ill. 264, the Supreme Court, overruling Lucan v. Cadwallader, 114 Ill. 285, and Eckhart v. Irons, 114 Ill. 469, held that a perpetual easement did constitute a freehold. Defendant's estate in the land beneath the Chicago river is either a pure freehold or it is under the ordinance granting to it the right to there construct and use a tunnel, a perpetual easement and thus a freehold. Plaintiff contends that defendant's tunnel is an impediment to navigation and so a purpresture, and therefore that the enforced removal thereof is not an interference with a freehold. Before defendant's tunnel was constructed and before any ordinance of the city existed, giving it the right to make such tunnel, place tracks therein and connect them with its tracks already existing in the west and south divisions of the city, defendant had by virtue of its ownership of the opposing river banks, an estate of freehold in and to the land where its tunnel now is. By the present proceeding it is proposed to deprive it of such land and give to it only such right to use the same for purposes of navigation as each and every member of the public under the changed condition of such freehold estate will have.

The wisdom of changing the course of the Chicago river by constructing a navigable stream therefrom at Twelfth or Twenty-second streets to Lake Michigan, has been much

discussed by engineers and the public.   Should it be thought wise to do so, and, by legislative act, with the concurrence and under the order of the city council, such changes were to be made and such stream constructed, it would hardly be contended that the taking of lands necessary for the purpose of such new course of the river was not the taking of a freehold.

We are of opinion that the taking of the freehold estate of defendant to the land beneath the natural bottom of the Chicago river is likewise the taking of a freehold estate, and that consequently in this appeal there is involved a freehold and that the appeal taken to this court must be dismissed.