## People, ex rel. City of Chicago v. West Chicago Street Railroad Company.

### Gen. No. 10,666.

1. COMPENSATION—*when traction company not entitled to, upon being compelled to lower or rebuild its tunnel.* Where a traction company has constructed and maintains by virtue of an ordinance a tunnel which passes beneath a navigable stream, such right of construction and maintenance is necessarily acquired subject to the easement of navigation upon the stream, and it is not entitled to compensation where it is compelled either to lower or rebuild such tunnel to meet the changed requirements of navigation.

2. MUNICIPALITY—*power of, to impede navigation.* A municipality through whose territorial limits a navigable stream passes has no authority to impede the free navigation of such stream.

3. SECRETARY OF WAR—*what not meddling with river within meaning of act requiring permission from.* The object which Congress had in view in passing the act which prohibits any one from meddling with a navigable stream without first obtaining permission from the Secretary of War, was to prevent the doing of anything without such secretary's permission which might result in obstructing navigation, and does not refer to a course of action which has for its object the removal of an obstruction to such navigation.

People v. West Chicago St. R. R. Co.

Mandamus proceeding.  Error to the Circuit Court of Cook County: the Hon. CHARLES G. NEELY, Judge, presiding.  Heard in the Branch Appellate Court at the October term, 1903.  Reversed and remanded. Opinion filed July 14, 1904.

GRANVILLE W. BROWNING, for plaintiff in error; EDGAR BRONSON TOLMAN, Corporation Counsel, of counsel.

W. W. GURLEY, JOHN P. WILSON and CHARLES S. BABCOCK, for defendant in error.

MR. PRESIDING JUSTICE STEIN delivered the opinion of the court.

The city of Chicago filed in the Circuit Court of this county its petition for a writ of mandamus directed to the West Chicago Street Railroad Company, defendant in error, commanding it to lower at its own cost and expense its tunnel under the south branch of the Chicago river near Van Buren street, so as to provide for a clear depth of at least twenty-one feet of water above said tunnel at all times between the existing dock walls, or to remove said tunnel, so that the same should cease to be an obstruction to the free navigation of said river.  The defendant answered the petition, and replications were filed raising issues of fact. A jury was waived, and upon trial the court found the issues for the defendant, denied the writ and entered judgment against the city.  A writ of error sued out by the city was dismissed by this court for want of jurisdiction on the ground that a freehold was involved.  People ex rel. v. West Chicago St. R. R. Co., 105 Ill. App. 439.  Upon appeal to the Supreme Court that court held (203 Ill. 551) that neither a freehold nor a franchise nor a constitutional question was involved, and remanded the cause to this court " with directions to consider and decide the case upon the errors assigned."

In its opinion the Supreme Court makes the following statement of the case:  " The petition sets out that the city of Chicago is a municipal corporation organized under the general act for the incorporation of cities and villages; that within its territorial limits is the Chicago river, a

navigable stream, having its natural outlet in Lake Michigan; that the West Chicago Street Railroad Company is a corporation organized under the laws of this state, operating lines of street railroad in said city; that on April 2, 1888, the city council adopted a resolution permitting said company to construct, at its own expense, the tunnel under the Chicago river for the use of its street railroad; that the tunnel was completed by said company in March, 1894; that the water over the tunnel varied in depth from seventeen to eighteen and three-tenths feet; that since the building of the tunnel there has been an increase in the size of the vessels used in lake transportation, so that it has become necessary, for the proper use and navigation of the river, to deepen the channel; that the Congress of the United States, on March 3, 1899, passed an act for deepening the same to a depth of twenty-one feet, provided that the work of removing and reconstructing bridges and piers, and lowering tunnels to permit a practical channel with such depth, should be done or caused to be done by the city of Chicago without expense to the United States; that said city has passed an ordinance ordering and directing said company, at its sole cost and expense, to lower the tunnel as prayed for in the petition, and upon demand said company has refused to do so. The fifth paragraph of the answer alleges that the defendant is the owner of the land under the river in which the tunnel is situated, and that the approaches to said tunnel on each side lie wholly on land owned by the defendant. The averments of said paragraph are not denied by replication and are therefore admitted. Mayor of Roodhouse v. Briggs, 194 Ill. 435. It is admitted on the record that the street railroad company is the riparian owner of both sides of the river at the place where the tunnel was constructed, and therefore owns the soil under the river, and that the tunnel was wholly constructed in its land under the bed of the river."

The tunnel was built by the defendant company under an ordinance of the city passed April 2, 1888, and reading as follows:

People v. West Chicago St. R. R. Co.

" Whereas, The Board of Directors of the West Chicago Street Railroad Company, on the second day of April, 1888, by and at the request of the Mayor of the City of Chicago, adopted the following resolution :

Resolved : That the West Chicago Street Railroad Company, in consideration of the passage and approval by the Mayor of the three ordinances passed by the City Council of Chicago on the thirteenth day of March, 1888, one granting to the West Division Railway Company the right to change its motive power from horse to cable or electric power, one granting to the Chicago Passenger Railway Company the right to make the same change, and one granting to the West Chicago Street Railroad Company the right to construct its tracks on Jefferson street between Madison and Washington streets, and to use horse, cable or electric power thereon, hereby agrees by and with the City of Chicago at its own expense to construct a tunnel under the Chicago River and acquire the necessary right of way therefor on a route to be located by said company between Madison and Twelfth streets, with the east terminus at Fifth avenue or west thereof and the western terminus at Halsted street or east thereof; provided, however, that this company shall have the right from said city to construct said tunnel under any intervening street or streets and said river within said limits, but such location and construction shall be such as not to interfere with the capacity, usefulness or grade of said streets, said tunnel to be used by this company for street railroad tracks, and the construction thereof shall be commenced within three years and be completed within four years after the said City Council shall grant permission to said railroad company to make said improvements, unless prevented by injunction or strikes, and the time said construction is so interfered with shall be added to said four years, all work to be done in a manner satisfactory to the Commissioner of Public Works, and the tracks through the tunnel shall be connected with the street railroad tracks controlled by the company.

Now, Therefore, Be It Ordained by the City Council : That the agreement in said resolution contained be and the same is hereby accepted by and on behalf of the City of Chicago as a consideration from said company for the passage and approval by the Mayor of the ordinances in said resolution specified, and authority is hereby granted said company to make the improvements therein mentioned."

The ordinance upon which this proceeding is principally based was passed by the city council March 19, 1900, and is as follows:

" Whereas, By Act of Congress of March 3, 1899, it is provided in the survey and estimate of cost for a channel twenty-one (21) feet deep, in the improvement of the Chicago River from its mouth to the Stock Yards on the South Branch, and to Belmont avenue on the North Branch, that aforesaid depth of twenty-one (21) feet is adopted as the project depth for such improvement; and

Whereas, It is in said Act further provided that all the work of removing and reconstructing bridges and piers and lowering tunnels necessary to permit a practicable channel with said depth to be obtained, shall be done or caused to be done by the City of Chicago, without expense to the United States; and

Whereas, The tunnel under the South Branch of the Chicago River at Van Buren street was constructed by the West Chicago Street Railroad Company under a certain ordinance of the City of Chicago, passed April 2, 1888; and

Whereas, A channel in the Chicago River of the depth of at least twenty-one (21) feet is now made necessary by the requirements of navigation and by the increase in the draft of vessels engaged in the shipping trade of the lakes; and

Whereas, The said tunnel is an obstruction to said proposed improvement to the Chicago River and to the navigation thereof, and as such obstruction must be lowered so that there may be above it in said river a depth of at least twenty-one (21) feet of water, or be removed altogether.

Now, Therefore, Be it Ordained by the City Council of the City of Chicago:

Section 1. That the West Chicago Street Railroad Company be and it is hereby ordered and directed, within three (3) months after the date of the passage of this ordinance, at the sole cost and expense of said West Chicago Street Railroad Company and without cost, damage, loss or expense of any kind whatsoever to the City of Chicago, to proceed to lower the tunnel under the South Branch of the Chicago River at or near Van Buren street, being the same tunnel heretofore constructed by the said West Chicago Street Railroad Company under an agreement dated April 2, 1888, between the said West Chicago Street Railroad Company and the City of Chicago, and an ordinance passed by the City Council of the City of Chicago April 2,

1888, authorizing the construction of said tunnel in accordance with the provisions of said agreement, so as to provide for a clear depth above said tunnel of, at least, twenty-one (21) feet of water at all times.    Said work shall be performed by the said West Chicago Street Railroad Company under the supervision and direction and subject to the approval of the Commissioner of Public Works of the City of Chicago, and shall be completed on or before March 1, 1901.

Sec. 2.    This ordinance shall be in force and take effect from and after the date of its passage."

It appears either from the proof or from admissions on the record that the Chicago river is a public stream, navigable in fact though not in law; that it is one of the most important highways of commerce in this country and has long been the most important port on the great lakes; that the defendant began digging said tunnel in February, 1890, and completed it in March, 1894, and has ever since used it for the transportation of passengers by means of cars running through the same; that the depth of water over the tunnel which is located just north of Van Buren street is from 17 to 18.3 feet; that under the present conditions of commerce vessels on the great lakes must and do draw about 21 feet; that modern vessels which carry the trade cannot pass over the tunnel and in consequence a large proportion of the shipping of the great lakes is prevented from making use of the river; that the entries and clearances of vessels on the Chicago river during 1899 were much less than in preceding years and that the commerce of the city has been and is constantly declining and diverted to other ports by reason of the existence of said tunnel.

The trial court—although by law not required to do so—found as a fact that "the said tunnel as constructed and maintained by said defendant is an obstruction to navigation of the said river and an obstruction to the improvement of said river to the depth of twenty-one feet at that point."    The proof fully sustains this finding.

For the city it is urged that the tunnel is a public nuisance and should therefore be abated.    By the defendant it

is, among other things, contended that no legal obligation rests on it to lower the tunnel; that the city has no right to demand its removal or lowering at the expense of the defendant and without compensation to it for the loss and damage which would be caused to it by the "taking" of the tunnel; that the lowering of the tunnel would accomplish no good purpose; that it was constructed under a contract with the city as shown by the ordinance of April 2, 1888, and that the ordinance of March 19, 1900, violates the provisions of said contract; that the tunnel was constructed under authority delegated by the state to the city, and that the city is estopped from claiming that it was unlawfully constructed or not built at a depth authorized by the city; that the defendant, being the owner of the fee to the bed of the river, had a right to build the tunnel in the way in which it was built and cannot now be disturbed in the possession or enjoyment thereof.

The Supreme Court, in deciding that this court had jurisdiction of the cause, had before it the very same record upon which we are now passing. Opposing counsel differ widely as to the effect of that decision. On the one hand it is maintained that it is controlling; on the other, that it has no bearing upon the merits of the controversy inasmuch as the Supreme Court itself said "that the only question is whether the Appellate Court had jurisdiction to hear and determine the errors assigned in that court."

As has already been stated the Supreme Court decided that the controversy involved neither a freehold, franchise or constitutional question; and we apprehend that the reasoning and the views which led it to that conclusion and upon which the same is predicated are binding upon us and conclusive so far as they go.

It is evident that the defendant will suffer great loss if the writ of mandamus compelling it either to lower the tunnel or to remove it be awarded. Relying on the license given it by the ordinance of April 2, 1888, it purchased land for the right of way at a cost of one million dollars and built the tunnel itself at an additional cost of eight

hundred thousand dollars.  Still it by no means follows
that it is therefore entitled to compensation.  The Supreme
Court, in determining whether or not a freehold was in-
volved, held that the defendant was organized under the
act in relation to street railroads, section one of which
provides that a street railroad company "may, subject to
the provisions contained in this act, locate and construct
its road upon and over any street, alley, road or highway,
or across or over any waters in this state in such manner
as not to unnecessarily obstruct the public use of such
street, alley, road or highway or interrupt the navigation
of such waters."  The court then proceed: "It was by
virtue of that act and a license from the city of Chicago
that the tunnel was constructed.  The company could
only acquire and hold the lands on each side of the river
for the purposes of its incorporation, and it acquired such
lands, carrying with them the soil under the river, subject
to the easement of the public for the purposes of naviga-
tion.  It could only exercise its chartered power to build
the tunnel and carry its street railroad under the river
upon the express condition contained in its charter that it
should not interrupt navigation.  The city claims no right
to require the tunnel to be lowered unless it is an obstruc-
tion to the paramount public right of navigation to which
*   *   *   the freehold in the soil is subject."  Further on
the court say: "Finally it is claimed that a constitutional
question is involved, on the ground that the city is attempt-
ing to take the property of the street railroad company
without just compensation and without due process of law.
We are of opinion that the issues in the case do not involve
any constitutional question.  The street railroad company
acquired its rights and built its tunnel upon the condition
that navigation should not be interrupted.  If the tunnel
is one which it has a right to maintain in its present loca-
tion, the city cannot require it to be lowered.  If it has no
right to maintain it in that location because it is an ob-
struction to navigation and exists in violation of the con-
dition upon which the railroad company was authorized to

construct it, its property will not be taken by requiring it to be lowered. It would scarcely be asserted that the public authorities could not remove an obstruction from the bottom of the river without first instituting a condemnation suit to ascertain the damage to the owner of the soil under the river. To maintain the navigable character of the stream in a lawful way is not taking any property or property right of the owner of the soil under the river, which is subject to the right of free and unobstructed navigation."

The defendant constructed its tunnel upon its own lands but subject nevertheless to the paramount easement of navigation. Under the ruling of the Supreme Court it has no right to maintain it in its present location if the tunnel is " an obstruction to navigation and exists in violation of the condition upon which the company was authorized to construct it." The evidence shows that the tunnel is such an obstruction, and the company cannot claim any compensation for the removal or the lowering of the tunnel because it was bound to know that the conditions and requirements of successful and profitable navigation might so change in the future as to then make the tunnel an obstruction, which it was not when built. In Bridge Co. v. United States, 105 U. S. 470, a bridge was erected at Cincinnati over the Ohio river by authority of the states of Ohio and Kentucky, and the federal government ordered a change in the mode of construction in aid of navigation entailing great expense upon the bridge company. It was held not entitled to compensation as it was erecting the bridge subject to the right of navigation. True, there was an express reservation to that effect in the act of Congress; but the same is found here in section one of the act under which the defendant is organized. See also State of Pennsylvania v. The Wheeling, etc., Bridge Co., 13 Howard 518; United States v. City of Moline, 82 Fed. 592; Scranton v. Wheeler, 179 U. S. 159; Gibson v. United States, 166 U. S. 269; United States v. Bellingham Bay Boom Co., 176 U. S. 211. We do not think that Monongahela Navigation Co. v.

People v. West Chicago St. R. R. Co.

United States, 148 U. S. 312, strongly urged upon our attention by defendant's counsel, militates against the views above expressed, or the cases cited in support of them. That in the language of the court was "simply a case of the taking by the government for public uses of the private property of the navigation company. Such an appropriation cannot be had without just compensation." Moreover what the government proposed to take and enjoy as the company had done before was a franchise given the latter to exact tolls. The case at bar involves no franchise, as expressly found by the Supreme Court. That court also found that this court has jurisdiction because there was no taking of defendant's property. There being no taking, no compensation is due.

It is argued that the tunnel cannot be lowered without rebuilding it, and that no one has a right to require this of the defendant any more than it could have been compelled to build it in the first place. So far as we have been able to discover, there is no proof as to whether the lowering involves a rebuilding; but even if it does, the writ should not therefore be denied. The relator asks either for a lowering or a removal. If it is entitled to the latter, the writ may be so framed, unless the defendant should prefer to go to the cost and expense of lowering its tunnel. That the tunnel cannot be lowered within the time fixed by the ordinance, that time having expired, is of no consequence because of the alternative relief prayed for.

Even if the ordinance under which the tunnel was built be deemed a contract between the city and the company, and not merely a license, still the obligation of such contract would not be impaired by the city's insistence that the tunnel be either lowered or removed. The city had only such authority in the premises as the legislature gave it by section 1 of article 5 of chapter 24 of the Revised Statutes (the Cities and Villages Act) and particularly by clauses 28 to 40 of said section. It had no right or power to make a contract that might result in destroying the navigation of its harbor by the placing of obstructions

therein, nor to pass ordinances giving others the right to obstruct its navigation.   The city itself could not lawfully obstruct the river.

It must also be borne in mind that in 1874, two years after the adoption of the Cities and Villages Act, the legislature passed the Horse and Dummy Act under authority of which the tunnel was built.   Pursuant to that act no tunnel could be built by the defendant whether with or without the consent of the city except upon condition that the structure should not impede navigation.

Nor do we think that the city by reason of its consent to the construction of the tunnel is estopped from calling for its abatement.   The charter of the defendant as declared by the Supreme Court prohibits it from putting into the soil under the river a structure that interferes with navigation.   " It could only exercise its chartered power * * * upon the express condition contained in its charter that it should not interrupt navigation."   203 Ill. 555. The law of the land cannot be set aside or nullified except by the same authority that made it.   To hold that an estoppel has arisen from the acts of the city would be equivalent to holding that it may abrogate a public law.

On March 3, 1899, Congress passed an act, of which section 10 reads as follows :

"It shall not be lawful to build or commence the building of any   *   *   *   structures in any   *   *   *   navigable river,   *   *   *   except on plans recommended by the chief of engineers and authorized by the Secretary of War; and it shall not be lawful to excavate or fill, or in any manner alter or modify the course, location, condition or capacity of   *   *   *   any navigable water of the United States, unless the work has been recommended by the chief of engineers and authorized by the Secretary of War prior to the beginning of the same."

It is contended that the mandamus prayed for should not be awarded because this section makes it unlawful for any one to meddle with the river without permission from the Secretary of War.   Plainly the object Congress had in view was to prevent the doing of anything without the secre-

tary's permission which might result in obstructing navigation. To remove or lower the tunnel will not obstruct navigation but aid it.

Other points are made, all of which have been duly considered. One of them is of sufficient importance to merit extended notice. Between the tunnel in question and the mouth of the river are two other tunnels, both the property of the city, one known as the La Salle street tunnel, the other as the Washington street tunnel. Each of said tunnels is as near the surface of the water of the river as defendant's tunnel. Even if the latter were lowered or removed, the river would be no more navigable than before on account of the two city tunnels. It is therefore insisted that defendant's tunnel cannot be an obstruction to the navigation of the river, the argument being that vessels drawing over eighteen feet are hindered from getting there by the other tunnels. To this view we cannot accede. Defendant's tunnel is none the less an obstruction, although the others are of the same character. Under the circumstances however, it would subserve no practical purpose to execute the writ of mandamus at the present time, and it should not be executed until the Washington street and La Salle street tunnels are both removed or lowered to a sufficient depth to be no longer an obstruction to navigation.

The judgment of the Circuit Court is reversed and the cause remanded with directions to said court to issue a writ of mandamus commanding defendant in error to remove its tunnel, said writ not to be executed until the time above indicated, a stay of proceedings to be ordered until then.

*Reversed and remanded.*