EMILY S. SULLIVAN, EXECUTRIX, AND MARTIN H. SULLI-
VAN, EXECUTOR, OF D. F. SULLIVAN, DECEASED, APPEL-
LANTS, VS. J. J. JERNIGAN, APPELLEE.

1. The ordinary skill and caution exercised by the timber raftsmen on
the Escambia river is a proper standard of comparison to ascer-
tain whether a particular raft was navigated down said river with
the necessary degree of skill and caution.

2. The existence or non-existence of a custom is a question of fact for
a jury. Its validity or invalidity is a question of law for a
court.

3. Custom cannot prevail against a legal right.

4. Any person has a right to drive logs or timber without putting said
logs or timber in rafts or clamps, and putting competent persons
in said rafts or clamps to guide them, on any navigable stream in
this State, at least so far as such driving of logs or timber does
not impinge upon the right of another to *navigate* said river in
any manner authorized by law.

5. The knowledge of one about to drive logs down a public stream that
another had obstructed the stream with booms, and who, not-
withstanding said obstructions, sets adrift his logs, which come
in contact with said booms and he is damaged thereby, does not
establish contributory negligence on the part of him who is driv-
ing said logs. The right to navigate the stream is paramount to
any obstruction not authorized by law.

Appeal from the Circuit Court for Escambia county.

Daniel F. Sullivan, the original appellee in this cause,
died during the pendency of the appeal in the Supreme
Court, and his executrix and executor came in voluntarily
as parties appellants to said appeal.

The facts of the case are stated in the opinion.

*John A. Henderson* for Appellants.

This was an action brought by appellee for damages al-

leged to have been sustained by him in consequence of the illegal obstruction of the navigation of the Escambia river by the booms of appellant, the items of damages being time, labor, and profits lost, besides two pieces of timber. The declaration alleges that the damages were incurred between 1st of July, 1880, and 30th of April, 1882; and that they were incurred despite the utmost skill and caution of appellee.

Appellant pleaded four pleas: 1, not guilty; 2, the boom was not an illegal obstruction to navigation ; 3, denial of the loss of the timber ; 4, that the boom did not cause the damage to appellee, but the same was caused by the want on his part of the care, diligence and caution used by others navigating the Escambia river with timber.

The testimony shows that a part of the damages claimed and embraced in the verdict was for the detention and loss of timber going down the river in drives.

It shows a drive to be loose timber not in rafts, in charge of one man. Sometimes the end of the drive would be two miles, sometimes twenty miles, ahead of the man in charge.

Driving timber involves loss and risk, for it is liable to run into swamps.

The custom since 1880 is to raft and not to drive.

The booms complained of are connected with appellant's saw mill. They have existed for 16 years. Rafts are likely to be impeded anywhere on the river. Twenty to twenty-five rafts daily during five months of each of the years 1880 to 1882, have been seen to pass appellant's boom with a few only temporarily detained.

I. The refusal to give the first instruction was calculated to lead the jury to discard from its consideration the testimony of the witness respecting the large number of rafts which daily pass unobstructed by the booms during

the period the appellee alleges his timber was thereby obstructed.

Booms are necessary adjuncts of saw mills on rivers. They are not *per se* nuisances, though they necessarily appropriate to the exclusion of other uses some part of the stream. The law will not assume that they obstruct navigation; but the alleged obstruction must be proved. Sullivan vs. Moreno, 19 Fla., 200.

The testimony in such case must be the experience of those who navigate the stream.

According to the testimony of J. B. Vaughan, 6,000 rafts to his knowledge passed the boom in two years, 1880 to 1882, without other than the temporary detention of a few rafts, incidental to rafting on the Escambia river, and he is fortified by the testimony of Davis, Adams and Mr. Vaughan.

That testimony was surely proper for the consideration of the jury upon the question whether the booms were a nuisance, as well as that of care and diligence upon the part of appellee, for it may well be said that the failure of one man to do what has been done 6,000 times by others, must be owing to want of skill or negligence on his part rather than any inherent difficulty in the performance.

II. The second instruction could have been refused upon no other hypothesis but this—that navigation is not a matter regulated by custom, and that because a stream is navigable it may be used by any one without reference to those usages which experience has established for the common benefit of all who navigate it or occupy its banks. That hypothesis is unwarranted by law.

The navigation of a stream is determined by usage, and to disregard such usage is an act of negligence. Lawson on Usage and Custom, 332; Gould vs. Boston Duch. Co., 13 Gray, 452.

Though the booms might have obstructed navigation, if appellee's negligence was contributory to the result of which he complains, he cannot recover. Moak on Torts, 280, 283; Butterfield vs. Forrester, 11 East, 60.

There was testimony to the effect that driving had ceased to be customary navigation of the Escambia at the time appellee's timber drives were obstructed by appellant's boom and that the customary rule was by rafting.

III. The refusal of the 3d and 4th instruction rests upon the implication that any wharf, boom or other structure on navigable waters, however essential to commerce, must be treated as a public nuisance whenever, owing to currents and eddies, it arrests loose timbers thrown into a stream under no guidance except such as can be exercised by one man distant from two to twenty miles.

The gist of the case made by the declaration is that the booms obstructed navigation.

A drive of timber, as it is described by appellee in his testimony, is in no legal sense navigation.

Navigation is the act of traversing seas, rivers, and lakes in ships or vessels. 2 Bou. L. Dic., 205.

It implies something at least under the control of mortal agency.

Hence a float, scow or raft may be the object of navigation.

But loose timber, given up to the blind force of currents and eddies to float where they direct, cannot fall within the idea of navigation.

*W. A. Blount* for Appellant.

The first instruction asked by the appellant, and refused by the court, was objectionable, in that—

*a.* There was no proof, nor attempt at proof, of the care,

diligence, &c., ordinarily exercised by raftsmen on Escambia River. There was testimony that certain rafts passed by the obstructions of defendant without being impeded, but no attempt to prove how few or how many were obstructed, and therefore no proof as to what care or skill was ordinary. Hence the instruction would have been to a point as to which there was no evidence.

*b.* The postulate upon which it was based is incorrect. It assumes that the question before the jury was as to "the care, diligence and skill ordinarily exercised by *timber raftsmen on the Escambia River.*" If there was any question of care, &c., before the jury, the true test of whether the plaintiff had duly exercised it would be obtained by comparing his conduct with the ordinary and usual conduct of prudent men engaged in the same business. 11 Exch., 781. The raftsmen of Escambia river might have ordinarily exercised more or less care than an ordinarily prudent man in the passage of these obstructions in the river. If less, it would not absolve appellee from ordinarily prudent effort to avoid injury; if more, their custom to expend more time and money in avoiding the obstruction of a trespasser could confer no rights on him to demand that everybody else should be more tender towards him than an ordinarily prudent regard for their own safety might require. The rule is founded upon no recognition of an obligation toward the trespasser, but upon the broad foundation that no one is entitled to immunity from danger or loss unless he takes reasonable care to guard against it.

*c.* The instruction assumes it to be a fact that there were a number of rafts " which passed the defendant's boom without being thereby impeded or obstructed during the period when plaintiff claims that said boom obstructed and impeded his timber," and asks that the jury be instructed

to consider the testimony of witnesses, if any there be, relating to such number—to such fact. If there be any doubt of the proof of the fact, the court cannot assume its existence, and a charge making such presumption is erroneous.

Here there are very grave doubts as to the passage of any number of rafts by the boom without impediment for it will be noticed that all of the witnesses of the appellant spoke from a standpoint down the river, after the impediment had been overcome, or had been at the boom but a short time during each year.

The second instruction was objectionable, in that—

*a.* There was no evidence whatever of a general custom, and the instruction, if given, would have been an abstraction.

*b.* The question of custom is a mixed question of law and fact, and the court could not leave it to a jury to find whether there was or was not a custom—and an instruction which asked it to do so was erroneous. The instruction to have been complete should have requested the court to declare to the jury what facts would constitute such custom as was claimed, and then direct the jury to find whether these facts had been proven or not. Mears vs. Waples, 4 Houst., 62; Chicago Packing Co., vs. Tilton, 87 Ill., 548.

Being incomplete, the court did not err in refusing to submit it to the jury.

*c.* Such a custom as the instruction covered would have been invalid, and it was the duty of the court so to pronounce it, and to refuse the instruction.

Custom is in no case admissible to control the established principles of law. Strong vs. Bliss, 6 Metc., 393; Schiefflin vs. Harvey, Anthon N. Y., 56; Home vs. Mutual, &c. Ins. Co., 1 Sanf., N. Y., 137; Dewees vs. Lockhart, 1 Tex.,

535 ; 1 Wm. Blackstone, 295 ; 2 Burrow, 1216; 14 Pick., 141 ; 41 Md., 158 ; 5 Wall., 663 ; 98 Mass., 216 ; 2 Johns., 327 ; 10 Wall., 383 ; 2 Wash. C. C., 24.

It is the legal right of every one to use a stream navigable for boats, vessels, rafts or floatages, for navigation with such vessels, &c. Wood on Nuisances, §§581, 586, 588 ; and the fact that others may choose to discontinue the use of their legal right, cannot debar the appellee from the use of his right. Winder vs. Blake, 4 Jones Law, N. C., 332 ; Smith vs. Floyd, 18 Barb., 523 ; 40 Cal., 447.

It may indeed be, as is held in some cases but firmly denied in others, that custom as to the manner of the exercise of a right may be admitted to show whether in a particular instance the right has been exercised negligently or not, but no court has ever held that a disuse of a right by some entitled to exercise it will debar another, not in privity with those disusing it, from exercising his right to use it.

d. This was a local custom, and as such should have been pleaded by the defendant, who sought to avail himself of it. Governor vs. Withers, 5 Gratt., 24 ; Jackson vs. Henderson, 3 Leigh, 196.

e. This, though a local custom, must have all the requisites of a valid usage. Wallace vs. Morgan, 23 Ind., 399; 12 Cal., 534.

It had not these requisites :

It had continued for only a few years, the answers of the witnesses being confined to the time after July, 1880, from which plaintiff claimed.

It had not been uniform or uninterrupted, for appellee and McDavid & Co. had used it for drives.

The evidence of it was insufficient, because it was simply negative, in showing that some persons had not used the river for drives, without showing that there had been any occasion for them to so use it, and that, therefore, they had

voluntarily relinquished their right—custom being founded upon implied assent.

There being an absence of these requisites, it would have been error for the court to submit to the jury the effects of a custom which did not legally exist. Assuming all the evidence of appellant to be true, it had not established a custom, and it was the duty of the court so to declare, at least negatively, by declining to give to the jury an insruction which left it to them to determine whether or not such custom had been proved. It would have been for the jury to say only whether those facts constituting the custom had been proved, but when, if the jury had found as true all the facts claimed, those facts were not sufficient to prove the custom, it was for the court to say that there was no custom. 4 Houst., 62, *supra* ; 87 Ill., 548, *supra*.

The third instruction asked was objectionable, in that—

*a.* The plaintiff had a right to navigate the stream, and his knowledge that a trespasser had obstructed it so that he had reason to believe that he would probably be temporarily delayed, and a part of his timber lost, placed no obligation on him to desist from the use of that right. The passage of the obstruction was not dangerous to him or to any one, it was not against public policy, and it surely cannot be law that because he used a highway which is the only one that he can use, he cannot recover for a delay occasioned by an unlawful obstruction because he had reason to believe that he would probably be delayed or his timber lost. 56 Penn. St., 204; Mahoney vs. Metropolitan R. R. Co., 104 Mass., 73; Lyman vs. Amherst, 107 Mass., 339.

At least making the attempt would not be conclusive evidence of negligence, which the instruction seeks to make it. 36 Vermont, 580; 18 Wis., 331; 29 Conn., 204; 8 Allen, 137; 7 Iowa, 488; 6 Allen, 39.

*b.* But the evidence developed a qualification without which the instruction would have been erroneous.. An instruction based upon only part of the evidence upon a given point and ignoring other testimony which is absolutely necessary for the jury to consider in order to arrive at the truth, would be wrong.

In this case, Jernigan testifies: " I told Mr. Davis, who was in charge of the boom for Mr. Sullivan. He said that each time if I would let him know when I was coming down, he would see that the boom did not delay me, but though I did let him know, he did not arrange the boom so that I would not be delayed." Under this state of facts he had the right to believe that, after notice by him, the boom would be in a condition (having the mouth closed,) so that he could pass without delay or loss. An instruction leaving a decision of the case to rest upon his knowledge of the obstructson and his reasonable belief of damage therefrom, without also submitting to the jury, for their finding, the question as to whether this reasonable belief had not been nullified by promise of defendant, would have been erroneous.

This instruction was objectionable, in that—

*a.* The declaration alleged the character of the obstruction, and claimed damages because it had obstructed the plaintiff in *driving* and rafting and *floating* logs and timber down the river. The question as to whether the damage resulting from impeding and obstructing *drives* is recoverable, was distinctly presented by the declaration. The plea took issue on the facts, and thereby admitted conclusively, for the purposes of this case, that the loss and delay of plaintiff's *drives*, by reason of obstructions in the Escambia river, furnished a ground of action good in law. Not having demurred, the defendant could not raise the question by instruction to the jury.

*b.* But, moreover, the instruction was not good in law.

Every person has a right to use a navigable river for the transportation of any commodity in any way not dangerous or detrimental to his neighbor. Navigable, in this sense, does not refer only to the character of the commodities transported or the vessels in which they may be transported, but also to the absence of the power of assertion of any private rights in the water or soil. If navigable, every one has a right to use it to transport floatages down the river from the head to the mouth, in any non-injurious way that he might see fit. Wood on Nuisances, §§581, 586 and 588. In doing so, the currents, eddies and flow of the river are as much his property as the right to the navigation of the river by a power independent of them, and he has as much right to rely upon their free, uninterrupted and natural action as he has to insist upon the surface of the river being left open. See 18 Barb., 277; 8 Mich., 18.

No one has any more right to interrupt or obstruct loose logs placed in the river, with the intent that they shall go with the current of the river to a given point of destination, than he has to interrupt or impede a boat or raft under the direct guidance of human skill. The drives had on them men to prevent their being permanently detained or lost by natural causes, and, but for defendant's boom, they would have reached their destination without loss and without further detention than that necessitated by such causes.

The appellant is not shown to be a riparian proprietor, and therefore his booms were trespasses *per se.* 21 Wall., 389.

The idea that the floating of logs is not navigation, does not meet the issue made. A river may not be navigable in its primary sense of being fit for use for vessels and boats, but it may be floatable, and an obstruction of this right of

18

flotation is as much a wrong as an obstruction of the right of navigation. Wood on Nuisances, *supra*.

The case in 18 Barb., *supra*, decides that a riparian proprietor has a right to construct booms and to stop his own logs, and that if he intercepts the logs of others but lets them go in a reasonable time, then others cannot recover against him. That portion of the case is not applicable here, because (1) Sullivan was not shown to be a riparian proprietor nor to have any rights, and (2) the boom which he constructed did not only intercept logs of other persons at times when he was stopping his, but was so formed as to intercept *all* logs at *all* times. Besides, the instruction is so framed as to ignore the rights of plaintiff to drive logs.

THE CHIEF-JUSTICE delivered the opinion of the court:

This suit was instituted by the appellee in the court below to recover damages from the appellant for obstructing and keeping a boom in the Escambia river by means of which the plaintiff was hindered and detained in the free navigation of said river with rafts and drives of logs.

The defendant pleads—

1st. That he is not guilty of the wrong and injury in the said declaration mentioned.

2d. That his said log boom is not an illegal obstruction to the navigation of said Escambia river in manner and form as in the said declaration alleged.

3d. That plaintiff did not lose any timber in manner and form as alleged in said declaration.

4th. That the detention and loss of plaintiff's timber, if any, was not caused by defendant's said boom but was caused by plaintiff's want of customary care, skill and caution exercised by others who navigate the said river with timber.

The first assignment of error is not insisted on here.

The second is in refusing to give the jury the instruction asked by defendant and numbered in the bill of exceptions.

1st charge. That the jury in considering the testimony before it in regard to the question whether the plaintiff exercised the care, diligence and skill ordinarily exercised by timber raftsmen on the Escambia river to prevent the conact of his timber with defendant's boom, must not confine its consideration to the statements of witnesses to such care, diligence and skill exercised by them to prevent such contact of plaintiff's timber rafts with such boom, but the jury must also consider in connection with such statements the testimony of other witnesses, if any there be, relating to the number of rafts navigated by other persons which passed the defendant's boom without being thereby impeded or obstructed during the period when plaintiff complains that said boom obstructed and impeded his timber.

And the said Judge did then and there deliver his opinion and decide that the said charge shall not be given, and declined to issue the same to the said jury, to which opinion and decision the defendant by his attorney did then and there except.

Evidence had been submitted to the jury by witnesses for plaintiff that the timber, both rafted and driven by him, had come in contact with defendant's boom and delay and detention caused thereby, although they had used due diligence to prevent such contact and detention. Evidence had also been introduced by defendant tending to show that a great number of rafts had been navigated down the river and past defendant's boom by other raftsmen without detention or damage. On this evidence the counsel for appellant asks the court to charge the jury that in considering the testimony in regard to the question as to whether

plaintiff had exercised the care, diligence and skill ordinarily exercised by timber raftsmen on the Escambia river, that they must not look alone to the statements of the witnesses to such care, skill and diligence, but must also consider in connection with such statements the testimony of other witnesses, if any there be, relating to the number of rafts navigated by other persons which passed the defendant's boom without being obstructed during the period when plaintiff complains that said boom obstructed his timber.

Counsel for appellee insists that the " postulate on which the instruction is based is incorrect. It assumes that the question before the jury was as to the care, diligence and skill ordinarily exercised by timber raftsmen on the Escambia river. If there was any question of care before the jury the true test of whether the plaintiff had duly exercised it would be obtained by comparing his conduct with the ordinary and usual conduct of prudent men engaged in the same business." While this is ordinarily the correct standard of comparison to ascertain whether services were performed with due skill, yet we think the instruction should have been given. It did not specify any particular raftsman or any particular number of them, but " timber raftsmen on the Escambia river." It evidently included all the persons engaged in such business on the said river.

It proposed as a standard of comparison of plaintiff's conduct of his rafts, the ordinary skill and caution of the " timber raftsmen " of said river. The ordinary skill and caution of these raftsmen, taken collectively, would become the rule of prudence, care and diligence; not to exercise a degree of care and skill equal to that ordinarily exercised by them would be negligent. What is said as to this instruction is meant exclusively of rafts and not of drives.

The evidence is that plaintiff used both methods of navigating said river.

The issue and the evidence justified the instruction asked ; counsel for appellee insists also that the instruction assumed it to be a fact that " there were a number of rafts which passed the defendant's boom without being thereby impeded or obstructed during the period when plaintiff claims that said boom obstructed and impeded his timber." We cannot agree with counsel in this view ; we think the language which immediately precedes what counsel considers an assumption of a fact in the instructions, to wit : " the testimony of other witnesses, if any there be," relieves the instruction of the objection.

The second instruction asked by defendant was in effect that if the jury found from the evidence that it was the custom and usage to float timber down said river in rafts, that the omission of plaintiff to raft his timber was an act of negligence in the navigation of said river, and that he was not entitled to recover.

The third instruction asked by defendant was in effect that if the jury were satisfied that the defendant's boom did obstruct the navigation on one side of the river, yet that the plaintiff knew of said obstruction before setting his timber adrift in the river without putting it in rafts and putting persons on it to guide it, that it was contributory negligence on the part of plaintiff, and that he was not entitled to recover.

The fourth instruction asked is that timber set adrift in the river without being put in clamps or rafts with persons on them to guide them, and when each piece is left to run by itself and under no impulse or guidance but the current and eddies of the stream, is not navigation in the sense of the law and that defendant's boom could not be an obstruction to loose floating pieces of timber. These three propo-

sitions may be properly considered together as they all involve the right of the plaintiff to drive his timber on a navigable river without confining it in rafts or clamps under the guidance of competent persons.

It is involved in the second instruction asked for, because if the plaintiff had such a right by law he could not be deprived of it by a custom; whether a custom exist or not, is a question of fact for a jury. Its validity or invalidity is a question of law for a court. Chicago Packing Co. vs. Tilton, 87 Ill., 548.

It is involved in the third instruction, because if it was a valid right the knowledge that an obstruction existed on the river below could not prevent him from exercising or attempting to exercise his right of navigation.

The fourth instruction asked sets up the proposition singly and directly. The determination of the question as to whether a person has a right to drive timber and logs on a navigable stream without confining them in rafts and clamps with persons on such rafts or clamps to guide them, will determine the correctness or incorrectness of these instructions.

In Maine, where from a similarity of interest we would naturally look for adjudications in this and similar questions, we have not been able to find any decision of its courts directly on this point. But while the question seems not to have been directly decided it seems nevertheless to have been generally conceded. In Treat vs. Lord, 42 Maine, 553, which was an action for trespass *quare clausum* for breaking dams of plaintiff, we must infer from the language that the logs were driven. These expressions are used, " his servants *drove* a large quantity of mill logs;" again, " and *sluiced* defendant's logs through one of plaintiff's mills." Again, "plaintiff forbade defendant from *driving* his logs through," and " that defendant thereupon

*drove through."* The Judge in instructing the jury says, " that if Coldstream was such a stream as the public would have a servitude in for *driving logs*," also " that the defendant had a right to *drive their logs* through" if it was a navigable stream.

This part of the charge was not excepted to. The only question raised was, was the river navigable *vel non.* See also Knox vs, Chaloner, Ib., 151. Carter vs. Thurston, 58 New Hampshire, 585, is more direct. In that case a suit for trespass was brought by an owner of land bordering a public stream for damages for entering upon his land to reclaim logs washed there by the current. In this case the logs were in a *drive.* The court say " one has the right to use a public stream in a proper and reasonable manner to float his logs, and if they strand on the land of a riparian owner he is not liable for any injury thereby to the land unless negligent, and may enter upon the land to reclaim the logs, but is liable for any improper use of the stream or unnecessary injury to the land." See also secs. 2 and 3, chap. 507, act of January 8, 1853, McClellan's Digest, 746, sec. 7. It was in evidence that the Escambia river had been so used for a long time and was still so used by some persons. Our conclusion is that a person has the right to drive timber or logs down a public stream without confining them in rafts or clamps, and putting competent persons on such rafts or clamps to guide them at least so far as such driving of timber or logs does not impinge upon the right of any other person to *navigate* said stream in any manner allowed by law. The right of a person to drive logs on such a stream is paramount to the right of another to obstruct said stream in whole or in part by booms, except in some special instances temporarily, which are not concerned here. As the case must be reversed for the refusal of the first instruction, we have thought it not improper to express our

views on the law governing the main point of the controversy.

Judgment is reversed and new trial granted.