THE PEOPLE OF THE STATE OF NEW YORK ex rel. LEHIGH VALLEY RAILWAY COMPANY et al., Appellants, *v.* STATE TAX COMMISSION, Respondent.

**Tax — franchise tax — railroads — riparian rights — power of State to regulate or prohibit bridges — bridging streams navigable by small craft exercise of special franchise even though ownership of banks and beds is in railroad company.**

1. The power of the State to regulate or prohibit bridges or other structures above a navigable stream is not dependent upon the ownership of the soil below. It may determine what may be built above its waterways as above its highways on the land. The right to bridge a stream is not an inseparable incident to riparian ownership.

2. The maintenance of a bridge by a public service corporation across navigable waters involves the enjoyment of a special franchise subject to taxation, though the bed is in private ownership and the bridge is at such a height that navigation is unobstructed. Special franchise taxes are, therefore, properly assessed on bridges erected and maintained by a railroad company across streams navigable only for small craft, though the company owns the beds of the streams and the banks on which the abutments rest, and the bridges do not interfere with existing navigation or with any navigation that is possible without deepening the beds.

*People ex rel. Lehigh Valley Ry. Co.* v. *State Tax Comm.*, 220 App. Div. 1, affirmed.

(Argued November 21, 1927; decided January 10, 1928.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the third judicial department, entered March 18, 1927, which unanimously affirmed final orders in certiorari proceedings to review the assessment of special franchises entered upon the report of a referee.

*Harold E. Simpson* for appellants.  A railroad crossing maintained over a stream, the bed and abutments of which are privately owned, does not constitute a special franchise where there is no interference with the public use of said stream. (*People ex rel. Met. St. Ry. Co.* v. *State Tax Comm.*, 174 N. Y. 417; *Fulton Light, Heat & Power Co.* v. *State*, 200 N. Y. 400; *Commissioners of Canal Fund* v. *Kempshall*, 26 Wend. 403; *Smith* v. *City of Rochester*, 92 N. Y. 463.)

*Albert Ottinger, Attorney-General* (*Frederic J. Merriman* of counsel), for respondent.  The burden of the proof is upon the relator to show the assessments are erroneous. (*People* v. *Priest*, 150 App. Div. 19; 206 N. Y. 274; *People* v. *Feitner*, 65 App. Div. 318; 169 N. Y. 604; *People* v. *Parow*, 195 App. Div. 745; *People ex rel. Dexter Sulphite P. & P. Co.* v. *Hughes*, 216 App. Div. 626; *People ex rel. Lehigh Valley Ry. Co.* v. *Burke*, 221 App. Div. 248; *People ex rel. Kellogg* v. *Wells*, 101 App. Div. 600; *People ex rel. Hud. & Manhattan R. R. Co.* v. *Tax Comm.*, 143 App. Div. 26; 203 N. Y. 119; *People ex rel. United Verde Copper Co.* v. *Feitner*, 54 App. Div. 217; *People ex rel. Eden Musee Co.* v. *Feitner*, 60 App. Div. 282; *People ex rel. N. Y. & R. B. R. R. Co.* v. *Tax Comm.*, 184 N. Y. 275; *People ex rel. Masonic Hall Assn., etc.*, v. *White, etc.*, 218 App. Div. 38; *Matter of Klein*, 92 Misc. Rep. 332.)  The waters crossed by relator at the locations in question are public waters and navigable and, therefore, public highways, and the crossings thereof create that kind or species of property called special franchise. (*Lamprey* v. *State*, 52 Minn. 181; *Fulton L., H.*

& *P. Co.* v. *State*, 200 N. Y. 400.)   The relator's bridge
crossings at the points in question are properly assessable
as special franchises even if the abutments rest upon the
land owned by the relator.   (*People ex rel. Western N.
Y. & Pa. Ry. Co.* v. *State Tax Comm.*, 212 N. Y. Supp.
161; *People ex rel. Manhattan R. R. Co.* v. *State Tax
Comm.*, 203 N. Y. 119; *People ex rel. Harlem River &
P. C. R. R. Co.* v. *State Tax Comm.*, 215 N. Y. 507;
*People ex rel. N. Y., O. & W. R. R. Co.* v. *State Tax
Comm.*, 116 Misc. Rep. 774; *Danes* v. *State*, 219 N. Y.
67; *Daniel Ball Case*, 77 U. S. 557; *Montello Case*, 20
Wall. 430; *Morgan* v. *King*, 35 N. Y. 459; *Carter* v.
*Thurston*, 42 Am. Rep. 584; *Thompson* v. *Androscoggin
Co.*, 54 N. H. 545.)

CARDOZO, Ch. J.   The question in this case is the one
left open and undecided in *People ex rel. Western N. Y.
& Penn. Ry. Co.* v. *State Tax Commission* (244 N. Y.
596).   We are to determine " whether the right to erect
a railroad bridge resting on abutments on private property
across a stream, the bed of which is in private ownership,
even though to some extent the river can be used for
navigation, constitutes a special franchise unless the
bridge so erected does actually interfere and obstruct
the use to which the public could subject the stream."

The Lehigh Valley Railway Company is the owner of
two bridges within the limits of the city of Ithaca, one
across Cascadilla creek and the other across Six Mile
creek.   Both creeks are navigable streams, though only
for small craft.   Motor boats, rowboats, rafts and skiffs
navigate the two streams above and below the crossings.
The railroad company is the owner of the bed of the creeks
and also of the banks on which the abutments rest.
The bridges do not interfere either with existing naviga-
tion, or with any navigation that is possible without
deepening the beds.

We think the maintenance of a bridge by a public

service corporation across navigable waters involves the enjoyment of a special franchise subject to taxation, though the bed is in private ownership and the bridge is at such a height that navigation is unobstructed.

The power of the State to regulate or prohibit bridges or other structures above a navigable stream is not at all dependent upon the ownership of the soil below. It is an incident to the public duty to maintain for the public benefit waterways that supply the natural avenues of commerce. Title to the bed of most of the rivers of the State is in the owners of the uplands (*Fulton L., H. & P. Co.* v. *State*, 200 N. Y. 400). The Hudson and the Mohawk may be exceptions, but the exceptions have their roots in the antiquities of history (*Danes* v. *State*, 219 N. Y. 67; *Waterford El. L., H. & P. Co.* v. *State*, 208 App. Div. 273; 239 N. Y. 629). So large and important a stream as the Oswego river was held in a leading case to be subject to the general rule (*Fulton L., H. & P. Co.* v. *State, supra*). The difference between the navigable quality of such a river and that of the creeks spanned by these bridges is one solely of degree. We cannot doubt that a railroad corporation, the owner of land along the banks of the Oswego, would be in the enjoyment of a special franchise within the meaning of the statute (Tax Law, § 2, subd. 6; Cons. Laws, ch. 60), if it were to throw a bridge across the river, no matter at how high a point above the level of the water. The franchise would be unrelated to the title to the bed below (*Trustees of Town of Southampton* v. *Jessup*, 162 N. Y. 122).

The truth indeed is that a bridge, however placed across a navigable stream, is a potential interference with navigation in such a sense and to such a degree as to preclude its construction by force of common right or without the license or approval of the appropriate agencies of government. Cascadilla creek and Six Mile creek are navigable waters within the accepted definition (*Morgan* v. *King*, 35 N. Y. 454; *U. S.* v. *Holt Bank*, 270

U. S. 49, 56).   Until Congress interferes, the State may develop as it will their navigable quality (*International Bridge Co.* v. *N. Y.*, 254 U. S. 126, 132; *U. S.* v. *Chandler-Dunbar Co.*, 229 U. S. 53).   It may say that bridges shall not be built at all if it finds the risk too great.   It may say that they may be built, but only upon conditions (*Gilman* v. *Philadelphia*, 3 Wall. [U. S.] 713).   One who builds or maintains them enjoys a special privilege, not due of common right or as incident to ownership.   This uncommon privilege, which, even if now irrevocable, might once have been withheld, is chargeable with a special tax, if the State elects to tax it.

We have said that a bridge over a navigable stream is subject in its construction to the veto of the State since it involves a menace, at least potential, to the unobstructed flow of commerce.   Interference with navigation can come from piers or other obstacles narrowing the channel.   It can come from the elevation of the structure, as where the bridges are so low that boats cannot go under them.   These are the main impediments, but not the only ones.   There may be dangers from above.   Navigation is impeded if objects falling from a bridge cause damage to the craft below, or expose the traveler to peril.   The State has the right to say to what extent such perils, even though slight, shall be permitted.   It may determine what may be built above its waterways as above its highways on the land (*Tilly* v. *Mitchell & Lewis Co.*, 121 Wis. 1, 13; 2 Elliott on Roads & Streets, § 830; cf. *People ex rel. N. Y. C. R. R. Co.* v. *Tax Comm.*, 239 N. Y. 183).

Support is found for this conclusion in decisions that define the regulatory power of Congress in respect of navigable streams.   The United States is not the owner of the beds of such streams within the limits of the States.   Whatever power belongs to Congress to control the course of navigation is a branch of its power to regulate interstate and foreign commerce, and is limited thereby. The law is settled, none the less, that its power to pro-

hibit or control the erection of bridges over navigable waters is as broad as any that would belong to it if it had title to the bed. Riparian owners may not escape the effect of its veto by proof that in the circumstances of a given case the obstruction would be negligible. They must submit to the enactments which ordain that in some instances Congress itself must authorize the bridge and that in all instances there must be the license and approval of administrative officers (*Cummings* v. *Chicago*, 188 U. S. 410, 429; *Stone* v. *Southern Ill. Bridge Co.*, 206 U. S. 267, 274; *Int. Bridge Co.* v. *N. Y., supra; Miller* v. *Mayor of N. Y.*, 109 U. S. 385; *Gilman* v. *Philadelphia, supra; People* v. *Hudson River Connecting R. R. Corp.*, 228 N. Y. 203, 217, 218; River & Harbor Act of March 3, 1899; 30 Stat. § 1151, § 9; Mason's U. S. Code, vol. 2, p. 2414, title 33, § 401; Blair, Federal Bridge Legislation, 36 Yale L. J. 808, and cases there cited). Much in point is the ruling in a recent case (*Economy Light Co.* v. *U. S.*, 256 U. S. 113). There the question was whether the Desplaines river, a stream navigable by small craft, was subject to the Federal statute. "We concur in the opinion of the Circuit Court of Appeals that a river having actual navigable capacity in its natural state and capable of carrying commerce among the States, is within the power of Congress to preserve for purposes of future transportation, even though it be not at present used for such commerce, and be incapable of such use according to present methods, either by reason of changed conditions or because of artificial obstructions. And we agree that the provisions of section 9 of the Act of 1899 (30 Stat. 1151) apply to such a stream" (*Economy Light Co.* v. *U. S., supra*). If Congress may exact a license, so also may the State, whose power of regulation is plenary till Congress intervenes (*Gilman* v. *Philadelphia, supra; Int. Bridge Co.* v. *N. Y., supra*).

The Lehigh Valley Railway Company, the owner of these bridges, is organized as a corporation under the

laws of this State, and must look to those laws for the definition of its powers.   The railroad corporation acts for the better part of a century have treated the right to span a stream as a privilege or franchise.   We see this in the act of 1850 (L. 1850, ch. 140, § 28, subd. 5).   Provision is there made that a railroad corporation may construct its road across any stream of water or watercourse, provided the stream or watercourse be restored to substantially its former state.   " Nothing in this act contained," however, " shall be construed to authorize the erection of any bridge, or any other obstructions across, in or over any stream or lake navigated by steam or sail boats, at the place where any bridge or other obstructions may be proposed to be placed."   We see the same thought in the later Railroad Act of 1890 (L. 1890, ch. 565, § 11) which in this respect continues the act of 1850 with changes merely verbal.   We see the same thought, emphasized and developed, in the Railroad Act in force at the time of the assessment (L. 1910, ch. 481, as amended by L. 1913, ch. 743, and L. 1916, ch. 109; Consol. Laws, ch. 49).   In that act there is a re-enactment of the provisions of the earlier statutes with the addition that the consent of the Public Service Commission shall be obtained whenever a bridge is built across a navigable creek.   A railroad corporation submits in the acceptance of its charter to the restrictive reservations accompanying the grant.

The right to bridge a stream is not an inseparable incident to riparian ownership (*Enfield Toll Bridge* v. *Hartford R. R. Co.*, 17 Conn. 40, 63), like the right, *e. g.*, to build a dock or a pier (*Town of Brookhaven* v. *Smith*, 188 N. Y. 74).   This is so though the bridge has been constructed without objection.   In the absence of a grant, the State may revoke such license, if any, as may be inferred from acquiescence, and resume dominion to itself.   Dams across rivers and even across creeks have been held to be unlawful if built without license, express

or implied, at points where the stream would otherwise be navigable (*Willson* v. *Black Bird Creek Marsh Co.*, 2 Pet. [U. S.] 245; *Pound* v. *Turck*, 95 U. S. 459; *U. S.* v. *Bellingham Bay Boom Co.*, 176 U. S. 211; *Waterford El. L., H. & P. Co.* v. *State*, 208 App. Div. 273, at pp. 286, 287, 288, explaining *Commissioners of Canal Fund* v. *Kempshall*, 26 Wend. 404). If there have been loose statements to the contrary, they have been made for the most part in jurisdictions where the building of a dam had the sanction, either express or implied, of the provisions of a statute (see, *e. g., Newbold* v. *Mead*, 57 Penn. St. 487; *Pearson* v. *Rolfe*, 76 Me. 380, 386; *Foster* v. *Spool & Block Co.*, 79 Me. 508, 511; *Kretzschmar* v. *Meehan*, 74 Minn. 211, 214). The erection of a bridge involves a kindred exercise of power (*Gilman* v. *Philadelphia, supra;* Gould on Waters, § 132). " There are three cases in which authority from the Legislature is necessary to erect a bridge over a stream. One is when the stream is navigable; 2d, when the State owns the bed of the stream; and 3d, when the right to take toll is desired " (*Fort Plain Bridge Co.* v. *Smith*, 30 N. Y. 44, 63).

Distinctions have at times been attempted between streams navigable for boats and those floatable for logs (Gould on Waters, § 110; 1 Farnham on Waters, § 29, p. 138; cf., however, *Morgan* v. *King*, 35 N. Y. 454, 459). There are statements that in the one class of waters the public right extends to the full width of the stream (*Sullivan* v. *Jernigan*, 21 Fla. 264, 279), and that in the other it is more restricted. We do not need to go into these distinctions now. The line between navigable and non-navigable waters is not always an easy one to draw (*Egan* v. *Hart*, 165 U. S. 188). Much will often depend upon the acquiescence of the State. Even an unlawful obstruction may not be abated as a nuisance at the suit of private persons if the State does not complain, and there is no showing of special damage by the champions of the public right (*Fort Plain Bridge Co.* v. *Smith, supra,*

at p. 62). Here the State itself is asserting its own dominion, never surrendered, but on the contrary, in the very creation of its corporations, explicitly reserved. The relator has no immunity against a challenge so august.

The order should be affirmed with costs.

POUND, CRANE, ANDREWS, LEHMAN, KELLOGG and O'BRIEN, JJ., concur.

Order affirmed, etc.