THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE NEW YORK CENTRAL RAILROAD COMPANY, Respondent, *v.* STATE TAX COMMISSION, Appellant.

Third Department, January 10, 1940.

John J. Bennett, Jr., Attorney-General, Henry Epstein, Solicitor-General [Timothy F. Cohan and Edward J. Grogan, Jr., Assistant Attorneys-General, of counsel], for the appellant.

Clive C. Handy [Frederick L. Wheeler and K. O. Mott-Smith of counsel], for the relator.

HEFFERNAN, J. The State Tax Commission has appealed from fifteen final orders of the Albany Special Term of the Supreme Court made in certiorari proceedings which canceled special franchise assessments against relator's property in the town of Stony Point, Rockland county, N. Y., for each of the years from 1921 to 1935, inclusive.

By stipulation of the parties the issues involved were tried together before a referee and are to be disposed of as one proceeding.

The relator is the lessee of the West Shore Railroad with the obligation to pay taxes. The West Shore Railroad for a considerable distance parallels the west shore of the Hudson river and passes through, among other places, the town of Stony Point, Rockland county. It crosses by means of bridges or trestles the waters of Iona creek bay, Doodletown bight and Popolopen creek. Iona creek is a tributary of the Hudson river and flows into Iona bay at a point between 500 and 1,000 feet west of the railroad trestle. Doodletown bight is a bay of the Hudson river, extending approximately 1,000 feet west of the railroad trestle and is connected with Iona bay by means of a small creek. Popolopen creek has its origin in the mountains on the west bank of the Hudson and flows into the Hudson river at the point where it is crossed by relator's railroad trestle.

The structures at Iona creek bay and Doodletown bight are wholly located in the town of Stony Point, Rockland county, while the structure at Popolopen creek is partially in the adjoining town in Orange county. This proceeding, however, concerns only that portion of the structure located in Stony Point.

The State Commission made special franchise assessments against all three of such occupations for each of the years 1921 to 1935,

inclusive. The relator instituted certiorari proceedings to review each of such assessments, alleging that the assessments were illegal because it owned the lands under water at the points of crossing; that the waters beneath the bridges were not public navigable waters and that the occupations were less than 250 feet in extent.

After a trial of the issues the referee reported the assessments should be canceled in their entirety. He found that the waters of Iona bay are not navigable waters and that the occupations of Doodletown bight and Popolopen creek, while over navigable waters, are less than 250 feet in length and, therefore, not assessable under subdivision 7 of section 2 of the Tax Law. The pertinent provisions of that section are: " The term ' special franchise ' shall not be deemed to include the crossing of a street, highway or public place outside the limits of a city or incorporated village where such crossing is less than two hundred and fifty feet in length, unless such crossing be the continuation of an occupancy of another street, highway or public place."

The evidence discloses that the trestle carrying relator's bridge across Iona bay is 1,692 feet in length and that such trestle crosses the open waters of Iona bay for a distance of 663 feet and marsh or swamp lands for the remaining 1,029 feet; that the railroad crosses Doodletown bight on a timber trestle 1,059 feet long, the extent of the crossing from high-water line to high-water line being 1,053 feet; that the timber trestle carrying the railroad across Popolopen creek is about 279 feet in length; that the tide ebbs and flows at Doodletown bight; at Iona bay and Iona creek for a distance of about one mile west of the trestle, and at Popolopen creek for a distance of about three-quarters of a mile west of relator's bridge.

When the bridges at Doodletown bight and Popolopen creek were originally constructed they contained draws to permit the passage of boats. The board of supervisors of Rockland county in consenting to the erection of such bridges required that draws opening to a full width of thirty feet be maintained in the bridges so that there would be no interference with navigation. The drawbridges were subsequently removed about 1910 and fixed spans thirty-five feet in width substituted in place thereof. The changes were approved by the War Department subject to the condition, however, that the War Department at any time might require such alterations of the bridges as the interests of navigation might make necessary.

At the request of appellant the referee found as conclusions of law that the waters of Doodletown bight and Popolopen creek where crossed by the railroad were public navigable waters and public highways. The referee also found that Iona creek bay, Doodletown bight and Popolopen creek at the respective locations of

relator's trestles are not navigable waters or public places within the meaning of subdivisions 6 and 7 of section 2 of the Tax Law and that the occupations of the relator at the several locations assessed herein are, and each of them is, less than 250 feet in length and not within the limits of a city or incorporated village. Apparently in reaching his decision that the assessments should be canceled the referee arrived at the conclusion that the portions of occupation actually navigable were less than 250 feet in extent and that consequently the case of *People ex rel. New York Central R. R. Co.* v. *State Tax Commission* (239 N. Y. 183) is controlling. In this we think the referee erred. The decision in that case was not based upon the question of navigability but rather upon the rights of riparian owners. The case before us does not involve any question as to the rights of riparian owners. Whether or not relator was properly assessed depends on whether or not there was any interference with the rights of the public to use navigable waters. Since the referee has found that the waters of Doodletown bight and Popolopen creek are public navigable waters there exists an easement or right in the public to use them as a highway. Being a public highway a franchise to cross is necessary. (*People ex rel. New York Central R. R. Co.* v. *State Tax Commission, supra; People ex rel. Lehigh Valley R. Co.* v. *State Tax Commission*, 220 App. Div. 1; affd., 247 N. Y. 9.)

The relator urges that it has title to the lands under water over which its trestles pass and that consequently the occupations are not special franchises nor taxable as such. The Tax Commission disputes relator's claim of title. Assuming, however, that title to the soil is in relator that does not confer upon it the right to construct or operate a railroad across such waters. (*People ex rel. Lehigh Valley R. Co.* v. *State Tax Commission, supra.*)

The referee has held that at Doodletown bight the length of the railroad bridge from high-water line to high-water line is 1,053 feet and at Popolopen creek the length of the bridge from the Rockland county line to high-water line is 267 feet, but since all navigation has to pass through the 35-foot openings provided in each of the bridges by the railroad company, he concluded that only such waters as pass through such openings can properly be said to be public navigable waters. The question involved in this case was not before the Court of Appeals for its determination in *People ex rel. New York Central R. R. Co.* v. *State Tax Commission (supra)*, but was the only question passed upon in the case of *People ex rel. New York Central R. R. Co.* v. *State Tax Commission* (238 App. Div. 267; affd., 268 N. Y. 519). That case involved special franchise assessments on a railroad bridge across Roeliff Jansen's kill,

a tributary of the Hudson river. The contention made by the appellant in that case in the Court of Appeals was that the only portion of the stream crossed by the bridge which under the evidence could be considered as navigable was that portion under a span seventy feet in length. It was urged that subdivision 7 of section 2 of the Tax Law refers to the length of the crossing of the navigable portion of the stream and not to the length of the crossing of the navigable and non-navigable portion combined, and that, therefore, the occupation assessed was less than 250 feet in length. This court rejected that contention and the Court of Appeals sustained our view. We think that case is decisive of the questions involved here.

From the evidence it appears that the trestle which carried relator's railroad across Iona bay is 1,692 feet in length and that such trestle crossed the open waters of Iona bay for a distance of 663 feet and marsh or swamp lands for the remaining 1,029 feet. The marsh and swamp lands are covered with water at high tide. The referee found that the mean rise and fall of the tide at Iona bay is about two feet. He also found that for a number of years a dock was located at Iona creek at a place called Jack's landing; that there is a sufficient amount of water in Iona bay to allow the navigation of small boats and that prior to the erection of the railroad bridge and trestle salt hay, hoop poles and hundreds of cords of wood were carried out of the creek by means of boats and rafts, and that small boats also have navigated the creek on different occasions. After making these findings of fact he concluded as a matter of law that Iona creek is a navigable stream but he refused to find that the waters thereof are public navigable waters or that Iona creek is a public highway. He concluded as a matter of law that the waters of Iona creek are not public navigable waters and hence that the assessment on relator's bridge crossing the same should be canceled.

Relator is seeking to sustain the decision of the referee upon the theory that the actual navigability of Iona creek ceased when the railroad trestle was constructed across Iona bay. This contention ignores the fact that the creek and bay had both been actually navigable commercially and for pleasure and that they still retain their capacity for use. It is not the amount or extent of navigation in a stream that is decisive; its capacity for use should be given primary consideration. (*People ex rel. Lehigh Valley R. Co.* v. *State Tax Commission, supra; Morgan* v. *King*, 35 N. Y. 454; *The Daniel Ball*, 77 U. S. [10 Wall.] 557; *The Montello*, 20 Wall. 430; *Economy Light Co.* v. *United States*, 256 U. S. 113.)

Navigability in fact is the test of navigability in the law. (*Oklahoma* v. *Texas*, 258 U. S. 586; *Leovy* v. *United States*, 177 id. 621;

2 Cooley's Constitutional Limitations [8th ed.], 1289.)   The general character of a stream as to being navigable is not changed by the fact that at a particular place it is not in fact navigable by boats. (*People* v. *New York & Ontario Power Co.*, 219 App. Div. 115; *West Virginia P. & P. Co.* v. *Peck*, 189 id. 286.)   Rivers are navigable in fact when they are susceptible of being used in their ordinary condition as highways of commerce.   A public right on a stream is a right of travel as on a public highway.   It is not necessary that in order to be navigable the stream should admit the passage of boats at all times and at all portions of the stream.   (*People ex rel. N. Y., O. & W. R. Co.* v. *State Tax Commission*, 116 Misc. 774; *Danes* v. *State of New York*, 219 N. Y. 67; *St. Anthony Falls W. P. Co.* v. *St. Paul Water Commissioners*, 168 U. S. 349.)

In *People ex rel. New York Central R. R. Co.* v. *State Tax Commission* (238 App. Div. 267) this court, speaking through Presiding Justice HILL, said: " The tide ebbs and flows up stream for more than half a mile above the bridge.   Formerly there was considerable commercial transportation and navigation on the kill.   It continued to some extent until 1915.   Fishermen still continue to navigate the stream in small boats.   The rise and fall of the tide was determinative of navigability under the English common law. (*Morgan* v. *King*, 35 N. Y. 454, 458.)   Streams so shallow as to accommodate small size craft only are now determined to be navigable in fact.   (*United States* v. *Holt State Bank*, 270 U. S. 49; *People ex rel. Lehigh Valley R. Co.* v. *State Tax Commission*, 247 N. Y. 9.) "

In *Economy Light Co.* v. *United States* (256 U. S. 113) the court said: " ' The true test of the navigability of a stream does not depend on the mode by which commerce is, or may be, conducted, nor the difficulties attending navigation.   If this were so, the public would be deprived of the use of many of the large rivers of the country over which rafts of lumber of great value are constantly taken to market.   It would be a narrow rule to hold that in this country, unless a river was capable of being navigated by steam or sail vessels, it could not be treated as a public highway.   The capability of use by the public for purposes of transportation and commerce affords the true criterion of the navigability of a river, rather than the extent and manner of that use.   If it be capable in its natural state of being used for purposes of commerce, no matter in what mode the commerce may be conducted, it is navigable in fact, and becomes in law a public river or highway.' "

It seems clear to us that the three bodies of water in question are public navigable waters and were properly assessed as special franchises.   The orders appealed from should, therefore, be reversed,

with fifty dollars costs and disbursements, and the special franchise assessments should be confirmed.

HILL, P. J., BLISS, SCHENCK and FOSTER, JJ., concur.

The final orders appealed from are reversed on the law and facts, with fifty dollars costs and disbursements as of one proceeding, and the special franchise assessments made against the relator's bridges at Doodletown bight, Iona bay creek and Popolopen creek are confirmed.

The court hereby reverses the following findings of fact made by the referee contained in the relator's proposed findings and numbered 16, 17, 36, 37, 38 and 39.

The court also hereby annuls and disapproves of the following conclusions of law made by the referee and contained in the relator's proposed findings, viz., 2, 3, 4, 5 and 6.

The court makes the following findings of fact:

1. That the railroad bridge of the West Shore Railroad crosses the waters of Iona creek bay for a distance of 1,692 feet measured from high-water line to high-water line.

2. That the bridge crossings of the West Shore Railroad over the navigable waters of Iona creek bay, Doodletown bight and the bay at the mouth of Popolopen creek are each in excess of 250 feet in length.

3. That Iona creek bay, Doodletown bight and the bay at the mouth of Popolopen creek where crossed by the railroad bridges of the West Shore Railroad are navigable waters, public places and public highways.

The court also makes the following conclusions of law:

1. That the franchises, rights and permission granted by the State of New York to the West Shore Railroad Company to construct, maintain and operate a railroad over the waters of Iona creek bay, Doodletown bight and the bay at the mouth of Popolopen creek were and are special franchises.

2. That the West Shore Railroad Company and its lessee, the New York Central Railroad Company, were properly assessed by the State Tax Commission for the special franchise occupations at Iona creek bay, Doodletown bight and the bay at the mouth of Popolopen creek for each of the years 1921 to 1935, inclusive.